# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5033 | **DATE** | 4/3/2003 |
| **CASE TITLE** | ELIZABETH SALAMANCA vs. ROBERT HALF CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [19-1] is granted as to the retaliation claim and denied as to the discrimination claims. Defendant's motion to strike [27-1] and plaintiff's motion to strike [26-1] are granted in part and denied in part. Plaintiff's motion to bar witnesses from testifying at trial [12-1] is granted. The joint final pretrial order and agreed pattern jury instructions shall be presented on April 25, 2003 at 9:00 a.m. Plaintiff's draft shall be submitted to defendant by April 16, 2003. Trial is set on May 5, 2003 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | APR 0 4 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 30 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 4/3/2003 | | |
| | | | date mailed notice | | |
| | CB courtroom deputy's initials | | PW mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELIZABETH SALAMANCA, )
)
Plaintiff, ) No. 02 C 5033
)
v. ) Suzanne B. Conlon, Judge
)
ROBERT HALF CORPORATION, )
)
Defendant. )

DOCKETED
APR 0 4 2003

## MEMORANDUM OPINION AND ORDER

Elizabeth Salamanca ("Salamanca") sues Robert Half Corporation, a division of Robert Half International Inc. ("Robert Half"), for race and national original discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 ("§ 1981"). Robert Half moves for summary judgment on all claims pursuant to Fed. R. Civ. P. 56. Both parties move to strike portions of the other's summary judgment submissions. In addition, Salamanca moves to bar two Robert Half witnesses from testifying at trial.

## BACKGROUND

### I. Evidence

Evidence submitted at the summary judgment stage must be admissible at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Therefore, the court must first determine the admissibility of the evidence presented by the parties before reaching the merits of Robert Half's summary judgment motion.

### A. Robert Half's Motion to Strike

Robert Half moves to strike "most of" Salamanca's responses to the 146 paragraphs contained in Robert Half's statement of facts ("Def. Facts") as well as Salamanca's 120 paragraphs of additional facts ("Pl. Facts"). Motion at 1. According to Robert Half, Salamanca's "responses are rife with narratives and independent assertions which are not responsive to Robert Half's fact

1



statements." Motion at 2, *citing* Pl. Resp. to Def. Facts at ¶¶ 13, 14, 15, 24, 31, 32, 34, 39, 42, 44, 47, 48, 53, 56, 74, 75, 82, 85, 97, 98, 126, 132, 133 and 135. *See also* Motion at 3, *citing* Pl. Resp. to Def. Facts at ¶¶ 13, 14, 15, 24, 31, 32, 34, 39, 42, 43, 44, 45, 46, 47, 48, 53, 56, 75, 82, 91, 96, 97, 98, 100, 110, 121 and 135. Despite the number of Salamanca's purported violations of Local Rule 56.1, Robert Half cites only one response as an example. *Id.*, *citing* Pl. Resp. to Def. Facts at ¶ 126. However, Salamanca properly disputes Robert Half's assertion in ¶ 126 that she failed to allege her termination was discriminatory by pointing to her complaint and charge of discrimination. Robert Half's motion to strike Salamanca's response to ¶ 126 is denied.

As to the other disputed paragraphs[1], the court "is not required to scour the party's various submissions to piece together appropriate arguments." *Little v. Cox's Supermarkets, Inc.*, 71 F.3d 637, 641 (7th Cir. 1995), *quoting Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)(internal citation omitted). Nevertheless, all relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993). Therefore, the court will disregard any responses by Salamanca that do not specifically dispute a properly supported factual statement by Robert Half.

Robert Half next moves to strike Salamanca's responses and additional facts that are not based on a proper evidentiary foundation. *See* Motion at 3, *citing* Pl. Resp. to Def. Facts at ¶¶ 64, 106, 136, 137 and Pl. Facts at ¶¶ 4, 8, 11, 12, 15, 103, 106, 107. Salamanca's denials of ¶¶ 64, 136 and 137 are premised in part on office manager Kristin Anderson's testimony. Given its reliance on Anderson testimony to support ¶ 64, Robert Half cannot reasonably contend Anderson does not have

---

[1] *See also* Motion at 4, citing Pl. Facts at ¶¶ 4, 10, 11, 113, 114, 115 and 120 and Pl. Resp. to Def. Facts at ¶¶ 32, 45, 46, 97, 98, 100 and 138; Motion at 6-7, *citing* Pl. Resp. to Def. Facts at ¶¶ 36, 54, 71, 74, 87, 88, 89, 92, 99, 105, 106 and 107 and Pl. Facts at ¶¶ 29, 35, 36, 41, 52, 58, 67, 68, 70, 72, 78, 97, 108, 109 and 118; Motion at 7, *citing* Pl. Resp. to Def. Facts at ¶¶ 121 and 134.

personal knowledge of the subject matter. Moreover, Anderson has personal knowledge as to whether she received Salamanca's letter. *See* Pl. Resp. to Def. Facts at ¶136. Anderson also has personal knowledge regarding district director Thomas Moran's knowledge of Salamanca's letter because Anderson testified that she told him about the letter. *See* Pl. Resp. to Def. Facts at ¶ 137. Accordingly, Robert Half's motion to strike Salamanca's responses to ¶¶ 64, 136 and 137 must be denied.

In contrast, Robert Half's motion to strike Salamanca's response to ¶ 106 as well as ¶¶ 103, 106 and 107 of her statement of additional facts must be granted. Salamanca's submissions rely solely on unauthenticated documents. Nevertheless, Robert Half's statement in ¶ 106 that it "has not treated any non-Hispanic employees differently than it has treated [Salamanca]" must be disregarded as improper legal argument. *See Malic v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)("The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertion in an organized manner; it is not intended as a forum for factual or legal argument").

Finally, Robert Half's motion to strike ¶¶ 4, 8, 12 and 15 of Salamanca's statement of additional facts must be granted in part and denied in part. Each paragraph is based on the testimony of Eric Baranchik. At the time of her termination, Salamanca provided administrative support for several divisions, including the accounting operations division headed by Baranchik. In that role, Baranchik has personal knowledge of Salamanca's performance as well as Robert Half's policies regarding discipline. However, Salamanca fails to establish Baranchik's knowledge of the entire scope of her job responsibilities. As Baranchik pointed out during his deposition, Salamanca is in the best position to describe the scope of her job duties because she worked for managers in other divisions. Baranchik dep. at 16-17. Under these circumstances, Robert Half's motion to strike must be denied as to ¶¶ 4, 8, and 15 and granted as to ¶ 12.

**B.     Salamanca's Motion to Strike**

Salamanca moves to strike Robert Half's argument, including its underlying factual statements, regarding the reasons for her termination. If Salamanca cannot prove a *prima facie* case of discrimination or retaliation, her motion is moot. Salamanca's motion must be considered in the context of Robert Half's legitimate, nondiscriminatory reasons if she is able to establish a *prima facie* case of discrimination or retaliation.

**II.    Facts**

All facts are undisputed unless otherwise noted. Robert Half is a staffing service company that provides clients with temporary and permanent employees in several areas, including administrative staffing, accounting, legal, information technology, management consulting and graphic design. Salamanca, who is Hispanic, worked for Robert Half as a receptionist. During the relevant time period, Salamanca's direct supervisor was Anderson, who in turn reported through the branch manager to Moran.

As a receptionist, Salamanca sat at the front desk where she greeted new applicants and clients and gave applicants appropriate forms. Salamanca also maintained computerized records of employees and processed application forms for her assigned divisions. To process an application form, Salamanca was required to "shell" or enter basic information from the application forms as well as the applicant's I-9 and W-4 forms. Once Salamanca completed the shelling process, she would place the application in a routing bin and send the I-9 and W-4 forms to Robert Half's Field Service Center in Buffalo Grove, Illinois.

On December 22, 2000, Anderson gave Salamanca a good performance evaluation. Based on her performance review, Anderson gave Salamanca the new title of "front desk coordinator." Anderson's recommendation for a salary increase for Salamanca was approved.

On August 27, 2001, Anderson received a three inch stack of incomplete I-9 and W-4 forms from Field Service Center. The incomplete I-9 and W-4 forms were for candidates for one of

4

Salamanca's assigned divisions. Anderson Dep. at 156-57. Although Anderson claims she discussed the returned I-9 and W-4 forms with Salamanca, Salamanca denies the conversation occurred. Around this time, Anderson told Salamanca that she received applications with I-9 and W-4 forms erroneously attached, rather than forwarded to the Field Service Center.

On September 12, 2001, Anderson asked Salamanca and the other receptionist, Tiffany Heisler, who is Caucasian, to compile a list of interviewed candidates with incomplete I-9 and W-4 information for their divisions. In addition, Anderson reminded Salamanca and Heisler that applications were to be entered within 24 hours, applications requiring I-9 and W-4 forms were to be shelled on the day of interview and applications were to be brought to Anderson twice a day.

On September 19, 2001, Anderson asked the receptionists to enter four applications a day. According to Salamanca, Anderson told her that she would understand if Salamanca's other responsibilities prevented her from entering four applications. For the next four days, Anderson documented the number of applications entered and shelled by Salamanca and Heisler, along with any mistakes or omissions, to determine if four applications was a realistic quota for the receptionists. Over this four day period, Salamanca entered a total of two applications. Heisler entered four applications, one of which was entered incorrectly. On September 20th, Salamanca shelled two applications, both containing errors. Heisler shelled one application, which was shelled incorrectly. On September 21st, Salamanca shelled seven applications, six of which were shelled incorrectly. Heisler shelled three applications; all were shelled incorrectly. On September 24th and 25th, Heisler entered nine applications; three were entered incorrectly. Of the six applications shelled by Heisler over this two day period, only one was shelled incorrectly.

According to Anderson, she criticized Salamanca for leaving the front desk unattended for 15 minutes on September 20, 2001. Salamanca denies Anderson criticized her for leaving the front desk. Rather, Salamanca claims Anderson authorized her to leave the front desk to bring her applications.

That same day, Anderson claims Salamanca gave her ten incomplete applications. In addition, Anderson claims Salamanca failed to shell four of the ten applications. Although Anderson claims she previously discussed these performance problems with Salamanca, Salamanca denies that Anderson raised any performance problems with her. Salamanca further denies giving Anderson any incomplete applications or failing to shell any applications.

Shortly thereafter, Anderson claims Salamanca yelled at her about her paid time off. According to Anderson, Salamanca waved her finger in front of Anderson's face while shouting at her. Salamanca denies yelling or waving her finger in Anderson's face. Anderson sent Moran an e-mail telling him about Salamanca's alleged performance deficiencies.

On September 24, 2001, Anderson claims she met with Salamanca because she had given Anderson applications with missing information. Salamanca denies the meeting occurred. That same day, Anderson claims Salamanca told her that certain applications were complete, even though Salamanca had written on the application forms that the applications were missing I-9 documentation. Salamanca denies this occurred.

On September 26, 2001, Anderson sent Moran an e-mail informing him that Salamanca had not entered or shelled any applications for the previous two days, and the majority of the applications she shelled the previous week were incorrect. During a meeting, Anderson states she informed Moran about the number of applications shelled and entered by Salamanca. In addition, Anderson told Moran that Salamanca failed to shell I-9 and W-4 forms correctly. Moran does not recall the meeting. Nor does Moran recall discussing Salamanca's work performance with Anderson.

On September 27, 2001, Salamanca and several co-workers drafted a letter to Moran about Anderson. In the letter, Salamanca and her co-workers complained that Anderson's "verbal abuse, threats, and rudeness cannot be taken by any of us any more." Def. Facts at ¶ 134, citing Salamanca Dep. Ex. 13. According to Salamanca and her co-workers, "some of [Anderson's] responses are not

only RUDE and RELENTLESS but we believe borderline illegal." *Id.* According to Salamanca, she previously told Moran that Anderson was prejudiced toward her. Salamanca dep. at 82-84.

Anderson claims Moran told her to "get rid of" Salamanca. According to Anderson, Moran did not give her a reason for Salamanca's termination. As a result, she does not know if Salamanca's race or national origin played a role in her termination because it was not her decision. Moran does not recall being involved in the decision to terminate Salamanca. Anderson was aware of Salamanca's letter prior to Moran's decision to terminate her. According to Anderson, she told Moran about the letter before he told her to terminate Salamanca. On September 27, 2001, Anderson terminated Salamanca's employment pursuant to Moran's instructions.

At the time of her termination, Salamanca provided administrative support for the accounting operations division headed by Baranchik. Baranchik occasionally provided feedback regarding Salamanca's performance during weekly group meetings. According to Baranchik, Salamanca shelled applications for his division correctly. In addition, Baranchik rarely found mistakes in the applications entered by Salamanca. After her termination, Baranchik provided Salamanca with a letter of recommendation.

Salamanca was initially replaced by Deborah "Christy" Straw, who is Caucasian. According to Robert Half, a hiring freeze prevented them from immediately hiring a replacement outside the company. Once the freeze was lifted, Robert Half hired Golden Perkins, who is African American, to replace Salamanca.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing

there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II. Race and National Origin Claims

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's race or national origin. 42 U.S.C. § 2000e-2(a). Section 1981 similarly prohibits employment discrimination based on race. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 346 (7th Cir. 1999), *citing Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). "While Section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zukerstein v. Argonne National Laboratory*, 984 F.2d 1467, 1472 (7th Cir. 1993).

In order to establish discrimination under Title VII or § 1981, Salamanca must offer either direct or indirect evidence of discrimination. *See Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Salamanca does not offer direct evidence that Robert Half terminated her employment because of her race or national origin. Instead, she relies on the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish her claims of race and national origin discrimination.

In order to establish a *prima facie* case of race or national origin discrimination, Salamanca must show: (1) she belongs to a protected class; (2) she met her employer's legitimate performance

expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). Robert Half argues that Salamanca cannot establish a *prima facie* case of race or national origin discrimination. Although Robert Half does not seriously dispute Salamanca can prove the first[2] and third[3] elements of a *prima facie* case, Robert Half claims summary judgment is appropriate because Salamanca cannot establish the second or fourth elements of a *prima facie* case of discrimination.

## A. Legitimate Performance Expectations

Robert Half first contends that Salamanca did not meet its legitimate performance expectations. A plaintiff may create an issue of fact by specifically refuting facts that allegedly support the employer's claim of performance deficiencies. *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1460-61 (7th Cir. 1994), *citing Komel v. Jewel Cos.*, 874 F.2d 472, 474-75 (7th Cir. 1989)("an employee's denial of specific events which form the basis of the employer's evaluation may be sufficient to create a genuine issue of fact"). Salamanca denies that the conduct underlying Anderson's criticism of her performance occurred. Baranchik supports Salamanca by specifically contradicting Anderson's assessment of her performance at the time of her discharge. On reply, Robert Half concedes this point by failing to address Salamanca's performance in the context of her *prima facie* case. A genuine issue of material fact exists as to whether Salamanca met Robert Half's legitimate performance expectations.

---

[1] Robert Half claims Salamanca "has a serious barrier to overcome" regarding the first element of her *prima facie* case because she contradicted herself during her deposition as to whether Anderson knew she was Hispanic. Even if Robert Half's cursory discussion preserves this issue for decision, Anderson's knowledge is irrelevant to Salamanca's *prima facie* case given Robert Half's position that Moran, who knew Salamanca was Hispanic, made the decision to terminate her employment.

[2] Robert Half claims that Salamanca cannot prove she suffered an adverse employment action because she failed to list her termination as a basis for her discrimination claim during her deposition. In her complaint, Salamanca specifically alleges that her "termination was discriminatory and retaliatory." Complaint at ¶ 9. "[T]here is no question that termination constitutes an adverse action . . . " *Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001). Even if this issue is preserved for decision, Robert Half fails to offer any authority supporting its claim that Salamanca's failure to list her termination in a laundry list of discriminatory acts during her deposition dooms her discrimination claim based on an act specifically alleged in her complaint. Robert Half never specifically asked Salamanca whether she considered her termination to be discriminatory.

### B. Similarly Situated Employees

Robert Half next contends Salamanca cannot establish that Robert Half treated similarly situated employees outside her protected class more favorably. "The plaintiff in a single-discharge case does not need to make a showing that 'similarly situated' employees were treated better because the inference of discrimination arises from the fact that they were constructively 'replaced' by workers outside of the protected class." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000). As Robert Half points out, Salamanca was initially replaced by a Caucasian employee. Thereafter, she was permanently replaced by an African-American employee, who also is outside her protected class. Robert Half apparently concedes this point by failing to address it on reply. On this basis alone, Salamanca raises a genuine issue of material fact on the final element of a *prima facie* case of discrimination.

Moreover, Salamanca offers evidence that Heisler engaged in similar conduct, but was not terminated. Both Salamanca and Heisler failed to enter four applications a day. In response, Robert Half argues Salamanca was terminated for other conduct as well. In making this argument, Robert Half ignores its concession that Salamanca raised a genuine issue of fact by denying the conduct underlying Anderson's assessment of her performance. *See also* Reply at 11 ("Although Plaintiff may dispute the accuracy of how her supervisor Anderson evaluated her performance, she admittedly has no evidence to dispute that Moran honestly believed she had performance problems at the time the decision was made to terminate Plaintiff's employment"). As a result, Salamanca raises a genuine issue of material fact as to whether Heisler was treated more favorably.

### III. Legitimate, Non-Discriminatory Reasons

Once Salamanca establishes a *prima facie* case, the burden of production shifts to Robert Half to produce a legitimate, non-discriminatory reason for her termination. *Foster*, 168 F.3d at 1035. If Robert Half sets forth a legitimate justification, the burden then shifts back to Salamanca to prove that Robert Half's reason is a mere pretext for discrimination. *Id.* The ultimate burden of

persuasion remains at all times with Salamanca. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

Salamanca claims Robert Half cannot advance a legitimate justification for her termination. Anderson claims she terminated Salamanca at Moran's request without knowing his reasons. Moran does not remember whether he was involved in Salamanca's termination.[4] Robert Half attempts to avoid Moran's memory loss by relying on the testimony of Anderson and Moran's secretary, Yesenia Brown. Salamanca moves to strike this testimony as inadmissible hearsay. Specifically, Salamanca moves to strike ¶¶ 88, 89, 91, 92 and 105 of Robert Half's statement of facts.

Contrary to Salamanca's position, ¶¶ 88 and 89 do not contain inadmissible hearsay. Anderson's testimony in ¶ 88 that Moran told her to fire Salamanca falls under the state of mind exception to the hearsay rule. Fed. R. Evid. 803(3). In ¶ 89, Robert Half relies on the testimony of Anderson, Moran and Brown for its statement that Moran made the ultimate decision to terminate Salamanca. Salamanca fails to explain how this testimony constitutes inadmissible hearsay. At most, Robert Half fails to establish foundation for the three witnesses' knowledge that Moran ultimately made the decision to terminate Salamanca.

In contrast, Brown's testimony in ¶¶ 91, 92 and 105 is inadmissible hearsay. In each paragraph, Brown testifies as to statements Moran made to her about the reasons for Salamanca's termination. Although Robert Half claims Brown's testimony is not offered for the truth of the matter asserted, Robert Half clearly uses Brown's testimony to show that Moran terminated Salamanca for poor performance. Brown does not have any personal knowledge of the reasons for Salamanca's termination. Def. Resp. to Pl. Facts at ¶ 98. Under these circumstances, the court cannot consider ¶¶ 91, 92 and 105 of Robert Half's statement of facts.

---

[3] Robert Half implies that Moran's amnesia occurred after it filed suit against him for breach of an employment agreement. The court may not make credibility determinations on summary judgment. *Liberty Lobby*, 477 U.S. at 255.

Nor can the court consider the portions of Robert Half's motion that rely on this testimony, including its statement that "Every explanation given for Plaintiff's termination by Anderson, Moran and Brown was that she was fired for poor performance." Motion at 12. It is undisputed that Anderson and Brown do not have personal knowledge of the reasons for Salamanca's termination and Moran cannot remember even being involved in the decision to terminate Salamanca. Def. Resp. to Pl. Facts at ¶¶ 24, 46 and 98. Moreover, Robert Half's reliance on its personnel action form listing the reason for Salamanca's termination does not cure its hearsay problem. Robert Half fails to offer any foundation for Brown's testimony regarding the information on the form. To the contrary, Brown testified that Anderson, who does not have personal knowledge of Moran's reasons for terminating Salamanca, filled out the form. Brown Dep. at 13, 15. Brown further testified that she did not see Moran read or initial the form. Pl. Facts at ¶ 97. In sum, Robert Half's failure to produce admissible evidence of a legitimate, non-discriminatory reason for Salamanca's termination dooms its summary judgment motion on her discrimination claims.

## IV. Retaliation Claim

Title VII prohibits employers from retaliating against employees who oppose unlawful employment practices covered by Title VII. 42 U.S.C. § 2000e-3(a). "The same standards governing liability under Title VII apply to § 1981 claims." *Gonzalez*, 133 F.3d at 1035. The Seventh Circuit recently clarified the proper standard for analyzing retaliation claims at the summary judgment stage. *See Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 643-44 (7th Cir. 2002)(articulating "new rule for the adjudication of retaliation cases"). Under the new rule, Salamanca can prove her retaliation claim in one of two ways. First, she may "present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that [she] engaged in protected activity . . . and as a result suffered the adverse employment action of which he complains." *Id.* If she succeeds in this showing, Robert Half may prevail on its summary judgment motion if it "presents unrebutted evidence that [it] would have taken the adverse

employment action against the plaintiff even if [it] has no retaliatory motive." *Id.* Alternatively, Salamanca may prove her claim under an adaptation of *McDonnell Douglas* by showing that "after filing the charge only [s]he, and not any similarly situated employee who did not file a charge, was subject to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Id.* If she succeeds in this showing, Robert Half may prevail on its motion for summary judgment if it "presents unrebutted evidence of a non-invidious reason for the adverse action." *Id.*

Although Salamanca relies on the *McDonnell Douglas* burden-shifting method to establish her retaliation claim, she fails to establish she was fired for engaging in protected activity while similarly situated employees who did not file a charge were allowed to keep their jobs. As an initial matter, Salamanca's complaints to Moran about Anderson were not protected activity. In her complaints, Salamanca never suggested to Moran that she was treated differently by Anderson because of her race or national origin. *See* Pl. Facts at ¶ 120. *See also* Pl. Resp. to Def. Facts at ¶ 140 (Salamanca admits that "[t]he letter to Moran does not allege that Anderson was 'discriminatory' or was discriminating against [her] on the basis of her being Hispanic or Mexican American"). Without evidence that she notified Robert Half during her employment of any possible discrimination, Salamanca cannot establish that she engaged in protected activity. *See Driver v. Arbor Management, Inc.,* No. 00 C 3933, 2001 WL 1183291, at *1 (N.D. Ill. Oct. 5, 2001)("By definition, the complaints at issue are not statutorily protected expression--for that purpose the expression must at least suggest to the employer (if not state outright) that the employee reasonably believes that she is being treated in a discriminatory manner because of her race or other protected classification").

Even if her complaints constituted protected activity, Salamanca fails to identify a similarly situated employee who did not complain about discrimination, but was allowed to keep their job. To the contrary, Salamanca's only alleged comparative, Heisler, signed the letter to Moran along

with Salamanca. Absent any evidence of a non-complaining similarly situated employee, Salamanca's retaliation claim fails as a matter of law.

V.      **Salamanca's Motion to Bar Trial Witnesses**

Salamanca moves to bar Robert Half from calling employees L. Ted Mawla and Robert Clark at trial. According to Salamanca, Robert Half disclosed both witnesses for the first time two days before the close of discovery. That same day, Salamanca sent deposition notices for the two witnesses for the discovery cut-off date. Robert Half responded by offering to produce the witnesses in their own offices in California and Colorado. In reply, Salamanca offered to take the deposition by telephone. Robert Half refused.

Rule 26(e) requires parties to supplement their Rule 26(a) disclosures at "appropriate intervals," and amend their responses to discovery requests "seasonably." A party failing to comply with Rule 26(e) *without substantial justification* is not permitted to use the information as evidence at trial or on a motion for summary judgment. Fed. R. Civ. P. 37(c)(1). Robert Half claims it first learned of Mawla and Clark during Moran's deposition on February 10, 2003. Nevertheless, Robert Half fails to explain why it waited over one week to disclose them as possible witness. Nor does Robert Half explain why it refused Salamanca's offer to depose the witnesses by telephone prior to the close of discovery. Under these circumstances, Salamanca's motion must be granted.

## CONCLUSION

Although Robert Half is entitled to judgment as a matter of law on Salamanca's retaliation claim, her discrimination claims must proceed to trial. Robert Half witnesses L. Ted Mawla and Robert Clark are precluded from testifying.

April 3, 2003                                              ENTER:

                                                           Suzanne B. Conlon
                                                           United States District Judge